Antonio PABELICO, Plaintiff,

v.

Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant.

No. C–82–4123–WWS.

United States District Court, N.D. California.

March 11, 1983.

J. Andrew McKenna, Rucka, O'Boyle &
Lombardo, Salinas, Cal., for plaintiff.

Stephen A. Shefler, Asst. U.S. Atty., San
Francisco, Cal., for defendant.

## ORDER

SCHWARZER, District Judge.

Plaintiff appeals under 42 U.S.C. § 405(g)
from a final decision of the Secretary of
Health and Human Services denying plain-
tiff's claim for disability income benefits.
Both parties move for summary judgment.

Plaintiff, a 30 year old man at the time of
the hearing, graduated from high school
and worked as a security guard in the Phil-
ippines before coming to the United States
in 1974 and assuming a clerical position
with the United States Army.

In February 1979, doctors detected a
brain tumor after plaintiff complained of
blurred vision, headaches and vomiting. In
March 1979, he underwent a craniotomy for
a third ventricular craniopharyngioma with
associated hydrocephalus. Post-operative
EEG and phychometric examinations were
normal and plaintiff did not experience sei-
zures (TR 169–170). Plaintiff later devel-
oped hypopituitarism, diabetes insipidus and
had problems with functioning sexually.
However, doctors prescribed drugs includ-
ing hydrocortisone, lenothyroxine and tes-
tosterone to remedy these conditions.

Plaintiff first filed for disability benefits
on June 8, 1979, and was found to be dis-
abled as of July 1, 1979. On July 27, 1979,

he was placed on disability retirement by the United States Army.

Periodic medical evaluations of plaintiff's post-operative condition prompted the Secretary to conclude that plaintiff's disability ceased in October 1980. Pursuant to 42 U.S.C. § 416(i)(2)(D), his disability insurance benefits terminated two months later, at the close of December 1980. Plaintiff protests the Secretary's determination that his disability ceased in October 1980.

ALJ Edmund O'Rourke found that plaintiff's disability ended in October 1980 because his condition improved following the removal of his brain tumor. Since plaintiff could perform a wide range of light and sedentary work in the private sector similar to the clerical position he held in the Army, the ALJ concluded that plaintiff's disability benefits were properly terminated in December 1980.

■ The sole issue before the Court on review is whether the ALJ's findings are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Perez v. Mathews,* 411 F.Supp. 1276, 1278 (E.D.Cal.1978).

To support his claim of disability, plaintiff testified that his feet swell on hot days; he has headaches every week which last overnight; he has problems holding things; his vision blurs after reading for three minutes; he is deaf in his right ear; his knees hurt after standing for three minutes; and his back hurts. At the hearing, he conceded that he has been deaf in his right ear since childhood and that the hallucinations experienced before removal of the brain tumor no longer occur. Later, Dr. Robert B. Robertson reported that plaintiff has had pain from the knees down in both legs since 1977 (TR 191). Plaintiff testified that he tends to his personal needs, such as fixing meals and shopping for groceries. He spends his time gardening, watching television and visiting friends. Since he does not sleep well, he often gets up at 2:00–3:00 a.m. for a cup of coffee and walks one-half mile in his slippers.

Plaintiff argues that the ALJ lacked sufficient medical information on which to base his decision that plaintiff was no longer disabled as of October 1980. Relying on the Army's determination that he is 100% medically disabled, plaintiff claims entitlement to summary judgment because the Secretary presented no medical evidence to show improvement of his post-operative condition.

Plaintiff claims that his condition satisfies the requirements for presumptive disability pursuant to section 11.05(B) of Appendix 1 to 20 C.F.R. 404.1501 *et seq.* (1981). Section 11.05(B) provides that brain tumors are to be evaluated under the criteria of sections 11.02—11.04 or section 12.02. Plaintiff alleges affliction with a chronic brain syndrome, defined by section 12.02 to consist of:

A. Demonstrated deterioration in intellectual functioning, manifested by persistence of one or more of the following clinical signs:

1) Marked memory defect for recent events; OR

2) Impoverished, slowed, perseverative thinking, with confusion or disorientation;

OR

3) Labile, shallow or coarse affect;

AND

B. Resulting persistence of marked restriction of daily activities and constriction of interests and deterioration in personal habits and seriously impaired ability to relate to other people.

However, there is substantial medical evidence to support the ALJ's decision that plaintiff's condition did not meet the requirements of section 12.02 and that he was no longer disabled as of October 1980.

From July 9 through July 18, 1979, plaintiff was treated at the Veterans Administration Hospital in Palo Alto, California. His symptoms on admission included head-

aches, frequent urination and thirst (TR 174). A physical examination revealed plaintiff's visual, sensory and motor functions were within normal limits (TR 175). Doctors noted a residual tumor but decided not to operate because there was a great risk of impairing plaintiff's vision and sense of smell (TR 175–176).

On September 26, 1979, plaintiff underwent a physical examination (TR 180–183). He experienced a drainage problem in his left ear but there was no perforation of air-fluid level (TR 182). Neurological, sensory and motor examinations were within normal limits (TR 183). The examining physician diagnosed recurrent tumor and hypopituitarism by history and left medial otitis (TR 183).

Clinical notes dated June 26, 1980, indicate that plaintiff's condition was stable and that he felt well (TR 184). On July 10, 1980, a CT scan indicated presence of a "progressive disease" (TR 184).

On October 17, 1980, plaintiff's examination by Dr. Robert B. Robertson was unremarkable except for the perforation of the right eardrum. Laboratory testing was within normal limits, plaintiff was orientated in all spheres and in no obvious distress. The doctor commented that plaintiff's somewhat slow mentation could be attributed to a moderate language barrier (TR 191).

On February 2, 1981, Dr. Raymond Dahl examined plaintiff at the Letterman Army Medical Center. All physical, neurological, opthalmologic and optometric examinations and blood tests were within normal limits. CT scans on February 3 and 20, 1981, showed a partial recurrence of the tumor (TR 200). Dr. Dahl commented that the tumor was stable, but he noted that there was a high likelihood of some future problems. Tests for diabetes insipidus were positive, but the condition could be stabilized by oral water replacement (TR 200). Noting that plaintiff was alert and cooperative, the doctor recommended monthly outpatient visits supplemented by a semi-annual re-evaluation of the recurrent tumor.

Following the hearing, plaintiff submitted clinical notes covering the period of March 19, 1981, through February 20, 1982 (TR 37–64). A CT scan on April 23, 1981, showed no change in his condition (TR 64). Notes dated June 4, 1981, state that plaintiff's headaches have been much less severe since surgery (TR 59). As of October 1, 1981, plaintiff no longer experienced frequent urination or excessive thirst (TR 53). An examination on October 16, 1981, revealed that the tumor had not progressed and that plaintiff's overall condition remains unchanged (TR 54). As of January 18, 1982, plaintiff's condition remained stable. The examining physician reviewed recent CT scans and commented that, if anything, the suspected tumor mass had decreased since October 1981 (TR 39). The last note dated February 20, 1982, indicates that the tumor had not recurred (TR 37).

In view of the extensive documentation of plaintiff's post-operative condition, the ALJ possessed ample medical evidence to determine that plaintiff did not suffer from a chronic brain syndrome as defined by Section 12.02. Plaintiff's reliance on the Army's determination of 100% disability is misplaced. While the ALJ may properly take note of that determination it is not binding upon the Secretary. *Small v. Califano,* 565 F.2d 797, 799 (1st Cir.1977); *Entrekin v. Weinberger,* 477 F.2d 561, 562 (5th Cir.1973). Since plaintiff has not sustained his burden to establish that his disability continued past October 1980, the date of cessation determined by the Secretary, the ALJ's findings must be affirmed. *Mathews v. Eldridge,* 424 U.S. 319, 336, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976); *Ward v. Schweiker,* 686 F.2d 762, 765 (9th Cir. 1982); *Patti v. Schweiker,* 669 F.2d 582, 586 (9th Cir.1982). However, plaintiff is not precluded from filing an application for disability income benefits in the future if recurrence of his brain tumor renders him disabled within the meaning of the Social Security Act. *Ward v. Schweiker,* 686 F.2d 762, 765–66 (9th Cir.1982); *Miles v. Harris,* 645 F.2d 122, 124 n. 1 (2nd Cir.1981).

Defendant's motion for summary judgment is granted and plaintiff's motion for summary judgment is denied.

IT IS SO ORDERED.